UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **FUNMILAYO ADETIMEHIN,** | § | |
| | § | |
| **Plaintiff,** | § | |
| VS. | § | **CIVIL ACTION NO. 4:14-CV-334** |
| | § | |
| **HEALIX INFUSION THERAPY, INC.,** | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM AND ORDER

Plaintiff Funmilayo Adetimehin brought this lawsuit alleging that she was denied a reasonable accommodation of her disability and suffered a hostile work environment in violation of the Americans with Disabilities Act (ADA). Pending before the Court are Defendant Healix Infusion Therapy, Inc.'s Motion for Summary Judgment (Doc. No. 17) and Motion to Strike (Doc. No. 23). For the reasons set forth in this order, Defendant's Motion to Strike is **GRANTED IN PART** and **DENIED IN PART**. Defendant's Motion for Summary Judgment is **GRANTED**.

## I. BACKGROUND

Plaintiff Funmilayo Adetimehin began working as a Verification Specialist for Healix Infusion Therapy, Inc., a healthcare company, on June 9, 2008. Decl. of Liz Orphé, Doc. No. 17-4 at 12. As a Verification Specialist, she was responsible for a variety of tasks related to administering patients' insurance benefits. *Id.* at 12-13.

In April 2011, Ms. Adetimehin began experiencing symptoms of a cerebral aneurysm. Adetimehin Dep., Doc. No. 17-2 at 63:16-64:11.[1] In October 2011, Ms. Adetimehin was

---

[1] When citing to Ms. Adetimehin's deposition, the Court refers to the original pagination of the deposition, not Defendant's Bates stamps or the pagination supplied by ECF.

approved for four weeks of Family and Medical Leave Act (FMLA) leave to allow her to have and recover from surgery for the aneurysm. *Id.* at 66:5-67:3. The surgery involved the insertion of a coil into her brain. *Id.* at 94:1-6, 95:22-24. Her request for FMLA leave was the first time she informed Healix about her aneurysm. *Id.* at 67:15-17. After her surgery in November 2011, Ms. Adetimehin took medication and had regular angiograms to ensure that the procedure had been effective. *Id.* at 94:20-95:1. After each of her angiograms, she was told that the procedure had worked. *Id.* at 96:14-16.

From October through December 2012, Ms. Adetimehin was disciplined or counseled on several occasions for poor performance. Decl. of Diana Pena ¶ 9, Doc. No. 17-4 at 9-10. On December 7, 2012, she was admitted to the hospital for five days for another angiogram. Letter from Huyen Dong, M.D. (December 12, 2012), Doc. No. 17-2 at 144; Adetimehin Dep., Doc. No. 17-2ar 114:14-16. Shortly after she returned to work, Ms. Adetimehin spoke with Liz Orphé, Healix's Vice President of Human Resources, regarding bullying by her supervisor, Kelley Adams. Orphé Decl. at ¶ 9. Ms. Adetimehin made a written complaint about Ms. Adams on January 7, 2013. Adetimehin Grievance Letter, Doc. No. 17-2 at 146. In that letter, Ms. Adetimehin stated that she was seeking FMLA leave because the stress and depression caused by Ms. Adams's bullying caused her to "[find] it difficult to concentrate on [her] job in order to be fully productive." *Id.* As a result of the investigation of the Grievance Letter, Ms. Adams was demoted and given a written counseling. Orphé Decl. at ¶ 11.

Ms. Adetimehin began her final period of FMLA leave on January 4, 2013. Letter from Liz Orphé to Plaintiff (January 8, 2013), Doc. No. 17-2 at 148. The health care provider who endorsed her request for FMLA leave was Sally Creed, a licensed professional counselor. Designation Notice (Family and Medical Leave Act), Doc. No. 17-2 at 150. Ms. Creed stated

that Ms. Adetimehin suffered from "chronic stress evidenced by physical shaking, constant headaches, inability to concentrate or focus on tasks, frequent mistakes, extremely fearful (of dying), worry and anxiety." *Id.* at 151. She recommended an initial period of eight weeks of leave, to run to March 5, 2013, followed by a part-time schedule for an indefinite period. *Id.* at 152. Ms. Orphé approved the leave from January 4, 2013 to March 5, 2013, but did not address the request for a part-time schedule. Orphé Letter (January 8, 2013), Doc. No. 17-2 at 148.

On March 5, when Plaintiff's initial leave was set to expire, Ms. Creed submitted a request for Ms. Adetimehin's leave to be extended to April 3, 2013. Certification of Health Care Provider for Employee's Serious Health Condition, Doc. No. 17-2 at 154-157. She also renewed her request that Ms. Adetimehin be put on a part-time schedule after her FMLA leave ended. Ms. Orphé responded on March 18, 2013, explaining that Ms. Adetimehin's 12 weeks of FMLA leave expired on March 28, 2013. Letter from Liz Orphé to Plaintiff (March 18, 2013), Doc. No. 17-2 at 158. Because Plaintiff would not be able to return to work before her leave expired, Healix would "consider [her] to have voluntarily terminated [her] employment with Healix." *Id.* After receiving this letter, Ms. Adetimehin did not contact Healix or offer to return to work before her FMLA leave expired. Adetimehin Dep., Doc. No. 17-1 at 139-140:29-7; 140:11-16.

Ms. Adetimehin filed a charge with the Equal Employment Opportunity Commission (EEOC) on April 25, 2013, alleging that Defendant failed to reasonably accommodate her disability. EEOC Charge of Discrimination, Doc. No. 17-4 at 4-5. The EEOC issued a right to sue letter on November 13, 2013. Notice of Right to Sue (Issued on Request), Doc. No. 17-4 at 3. Ms. Adetimehin filed this lawsuit on February 12, 2014. Complaint, Doc. No. 1.

## II. MOTION TO STRIKE

Defendant has moved to strike portions of Plaintiff's Affidavit, submitted as one of three exhibits to her Response to Defendant's Motion for Summary Judgment. Doc. No. 21-3. Specifically, Defendant seeks to exclude paragraphs 4, 5 and 6 of the Affidavit because they would be inadmissible at trial.

A plaintiff responding to a motion for summary judgment must show that there is a question of material fact sufficient to bring the case to a jury. To do so, the plaintiff's evidence must be admissible in some form at trial. Fed. R. Civ. P. 56(c)(2). An affidavit or declaration used to support or oppose a motion for summary judgment must 1) be made on personal knowledge, 2) set out facts that would be admissible in evidence, and 3) show that the affiant or declarant is competent to testify on the matters stated. Fed. R. Civ. P. 56(c)(4). Merely asserting personal knowledge is not sufficient: "Affidavits asserting personal knowledge must include enough factual support to show that the affiant possesses that knowledge." *Thomas v. Atmos Energy Corp.*, 223 Fed. Appx. 369, 374 (5th Cir. 2007) (citing *El Deeb v. Univ. of Minn.*, 60 F.3d 423, 428 (8th Cir. 1995)).

Defendant first challenges the following statement in Plaintiff's affidavit:

> I have personal knowledge of other Healix employees who worked part-time schedules. This includes the Intake Manager, Kelley Adams, who went from full-time to part-time in the fall of 2012 for personal matters. Intake managers are superior to verification specialists.

Adetimehin Aff. at ¶ 4. Defendant argues that this statement does not include enough factual support to show that Ms. Adhetimehin knew that Ms. Adams worked a part-time schedule.[2] In response, Plaintiff first points to her deposition testimony — which was not incorporated into her

---

[2] Defendant also contests the accuracy of this statement. For the purposes of deciding the motion to strike, the Court considers only whether the affidavit, on its face, contains sufficient factual support to show that the affiant has personal knowledge of the facts asserted.

4

response to Defendant's summary judgment motion — that her colleague, Simone White, had told her that Kelley Adams had gone part-time so that she could go to school. Even if Plaintiff's affidavit contained this information, it would nonetheless be inadmissible hearsay, and Plaintiff has not argued that it would come in under any of the hearsay exceptions. *See* Fed. R. Evid. 801. Next, Plaintiff asserts in her brief that she "personally witnessed Ms. Adams' hours decrease, and whether that was a change in position or a mere reduction of her salaried hours was not of Plaintiff's concerns." Had Ms. Adetimhin included this statement in her affidavit, it may have established her personal knowledge of Ms. Adams's hours. But a statement in a brief is not evidence permitted by Rule 56. *See* Fed. R. Civ. P. 56(c)(1)(A). The Court therefore concludes that it is appropriate to strike paragraph 4 of Ms. Adetimehin's affidavit.

> Next, Defendant objects to a portion of paragraph 5 of the affidavit:
>
> My friend, Simone White, sent me an email after I left for my second four-week FMLA leave. The email informed me of the manager's words and actions to one another about my health situation.

Adetimehin Aff. at ¶ 5. Defendant contends that 1) Ms. Adetimehin has not shown a foundation for her knowledge of these facts and 2) the statement is hearsay. To the contrary, Ms. Adetimehin has clearly set forth the basis for her knowledge: the e-mail she received from Ms. White. And the statement is not hearsay. To be hearsay, a statement must be "a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion." Fed. R. Evid. 801(a). Neither the fact that Ms. White sent the email nor Ms. Adetimehin's description of the email's contents falls within this definition. Therefore, the Court will not strike this portion of Ms. Adetimehin's affidavit.

> Finally, Defendant objects to the entirety of paragraph 6 of Ms. Adetimehin's affidavit:
>
> I have personal knowledge of two times in which Healix blocked over-visited websites by employees. This includes 'Facebook' and 'Netflix.' Employees were watching movies

> and were consuming too much internet data. No one was punished for this computer use, and I am certain this occurred in both the billing and verification departments.

Adetimehin Aff. at ¶ 6. Defendant contends that this, too, lacks foundation for personal knowledge and is conclusory. The Court will not strike the first two sentences of this paragraph, concerning blocking Facebook and Netflix, as it is reasonable to infer that an employee whose job included routine computer use would know that certain websites are blocked. However, Ms. Adetimehin has not averred any basis for her knowledge of why the websites were blocked or whether anyone was punished. Therefore, the Court will strike the third and fourth sentences of this paragraph of the affidavit.

### III. MOTION FOR SUMMARY JUDGMENT

#### A. LEGAL STANDARD

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.,* 485 F.3d 253, 261 (5th Cir.2007) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas,* 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by showing that there is an absence of evidence to support the nonmoving party's case. *See Celotex,* 477 U.S. at 325. When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the allegations in its pleadings. The nonmovant must identify specific evidence in the record and articulate how that

evidence supports that party's claim. *Baranowski v. Hart,* 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (internal quotation omitted). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves,* 538 F.3d 373, 376 (5th Cir. 2008).

### B.  REASONABLE ACCOMMODATION

Ms. Adetimehin suffers from hypertension, cerebral aneurysm, anxiety and depression. She claims that one or more of these conditions constitutes a "disability" under the ADA and that Healix refused to grant the reasonable accommodation of her disability that she requested, namely, four weeks of part-time status.

The Americans with Disabilities Act provides that covered employers may not discriminate against individuals on the basis of disability. 42 U.S.C. § 12112(a). Under the ADA, discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is … an employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b). In the Fifth Circuit, a plaintiff alleging a failure to accommodate a disability must prove that 1) the plaintiff is a qualified individual with a disability; 2) the disability and its consequential limitations were known to the employer; and 3) the employer failed to make reasonable accommodations for such known limitations. *Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (internal quotations omitted).

"As a threshold requirement in an ADA claim, the plaintiff must ... establish that he has a disability." *Rogers v. Int'l Marine Terminals*, 87 F.3d 755, 758 (5th Cir. 1996). The relevant time for assessing the existence of a disability is the time of the adverse employment action. *EEOC v. Chevron Phillips Chemical Co., LP*, 570 F.3d 606, 618 (5th Cir. 2009). The ADA defines "disability" as: (1) "a physical or mental impairment that substantially limits one or more major life activities"; (2) "a record of such an impairment"; or (3) "being regarded as having such an impairment." 42 U.S.C. § 12102(2); *see also Hale v. King*, 642 F.3d 492, 500 (5th Cir. 2011). Working is a "major life activity" such that an individual is disabled for the purposes of the ADA if her ability to work is "substantially limited." 29 C.F.R. § 1630.2(i)(1)(i).

Here, Ms. Adetimehin contends that she suffers from a combination of physical and mental impairments that, taken together, substantially limit the "major life activity" of working. Defendant argues 1) that her physical conditions (hypertension and cerebral aneurysm) were not symptomatic at the time of the adverse employment action, and 2) her mental conditions (depression and anxiety) did not substantially limit a major life activity.

As the parties have recognized, either Ms. Adetimehin's physical conditions or her mental conditions could be disabilities if they substantially limited one or more major life activities. And the Court has no doubt that these conditions were very distressing to her. But the Court does not believe Plaintiff has put any evidence into the record that a major life activity was substantially limited by this condition.

When Ms. Adetimehin began her final period of FMLA leave in January 2013, her health care provider Sally Creed told Healix that Ms. Adetimehin suffered from "chronic stress evidenced by physical shaking, constant headaches, inability to concentrate or focus on tasks, frequent mistakes, extremely fearful (of dying), worry and anxiety." Designation Notice (Family

and Medical Leave Act), Doc. No. 17-2 at 151.[3] Two months later, Ms. Creed observed that Ms. Adetimehin was improving, but recommended part-time status to allow Ms. Adetimehin to "learn[] how to handle stress more appropriately." Certification of Health Care Provider for Employee's Serious Health Condition (Family and Medical Leave Act), Doc. No. 17-2 at 156. However, at her deposition, Ms. Creed admitted that Ms. Adetimehin was looking for other jobs — including full-time work — while she was on FMLA leave in early 2015. Creed Dep., Doc. No. 17-3 at 57:2-4; *see also* Progress Notes (Jan. 23, 2013), Ex. 8 to Creed Dep., Doc. No. 18 at 4. Ms. Creed also testified that if Ms. Adetimehin had found a full-time job with another employer, Ms. Creed would have recommended that she take that job, beginning immediately. Creed. Dep., Doc. No. 17-3 at 57:5-11.

The inability to perform a single, particular job does not constitute a substantial limitation to the major life activity of working. *See Hileman v. City of Dallas*, Texas, 115 F.3d 352, 353-54 (5th Cir. 1997). The record abundantly reflects Ms. Adetimehin's struggles as a Healix employee, including her belief that she was being bullied by her superiors. *See, e.g.*, Adetimehin Aff. at ¶ 5; Creed Dep., Doc. No. 17-2 at 55:1-19. However, her health care provider was quite clear that these struggles were specifically related to Ms. Adetimehin's job at Healix, not her overall ability to work. Even extreme stress caused by the circumstances of a particular job — while understandably very disturbing to an employee — is not a qualifying "disability" for the purposes of the ADA. *See Mason v. Potteri*, Civ. No. H-08-03198, 2010 WL 4791497, at

---

[3] Ms. Creed also noted that "She had surgery for a brain aneurysm (11/12) and it is still a threat to her health." *Id.* In fact, Ms. Adetimehin testified at her deposition that the aneurysm surgery took place in December 2011. Adetimehin Dep., Doc. 17-2 at 128:14-24. Ms. Adetimehin was also hospitalized in December 2012. Letter from Huyen Dong, M.D. (December 12, 2012), Doc. No. 17-2 at 144. At that time, her doctor wrote that "[s]he will be able to return to work with no restrictions effective Friday, December 14, 2012." *Id.* There is no evidence in the record that she suffered any ongoing physical symptoms due to the aneurysm at the time in question, though she testified that her stress and anxiety was related, in part, to the aneurysm.

\*11 (S.D. Tex. Nov. 15, 2010). Accordingly, Ms. Adetimehin has failed to raise a question of material fact as to the first prong of her reasonable accommodation claim.

Because Ms. Adetimehin has not raised a question of fact as to her disability, the Court need not reach the question of whether the part-time schedule she requested would be a reasonable accommodation required under the ADA. Likewise, the Court does not consider Defendant's evidence of an after-acquired evidence defense. Summary judgment is **GRANTED** to Defendant on Plaintiff's claim that it failed to provide a reasonable accommodation in violation of the ADA.

### C. HOSTILE WORK ENVIRONMENT

Plaintiff's complaint also asserts a claim of hostile work environment on the basis of her disability. With respect to this claim, Defendant seeks summary judgment on the basis that Plaintiff failed to administratively exhaust the claim before the EEOC.

The ADA requires employees asserting disability discrimination to file an administrative charge with the EEOC before filing suit in federal court. 42 U.S.C. § 12117(a). As with claims brought under Title VII, the purpose of an EEOC charge is to place an employer on notice of the "existence and nature of the charges against it." *EEOC v. Shell Oil Co.*, 466 U.S. 54, 77 (1984). A plaintiff who files an EEOC charge will be considered to have administratively exhausted any claims which "can reasonably be expected to grow out of the charge of discrimination." *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006). Applying this standard, courts have disallowed hostile work environment claims for which the EEOC charge makes no reference at all to harassment or any allegations that coworkers bullied, teased, belittled or otherwise treated the plaintiff negatively because of his or her protected characteristic. *See Walton-Lentz v. Innophos,*

*Inc.*, 476 Fed. Appx 566, 570 (5th Cir. 2012); *Anderson v. Sikorsky Support Services, Inc.*, No. 2:13-cv-208, 2014 WL 5768573 (S.D. Tex. Nov. 5, 2014).

Here, Ms. Adetimehin's EEOC charge does not use the word harassment. It also does not include any of the allegations of bullying that she describes in her complaint. In contrast, it plainly states what the Court believes to be the core of her complaint: that Healix "failed to reasonably accommodate her disability." Accordingly, Plaintiff's hostile work environment claim is **DISMISSED**.

For the foregoing reasons, Defendant's Motion to Strike is **GRANTED IN PART** and **DENIED IN PART**. Defendant's Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on the 6th of April, 2015.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE